

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Rolando Eliecer Díaz<br><br>Peticionario | Certiorari<br><br>2011 TSPR 150<br><br>183 DPR ____ |

Número del Caso:  CC - 2010 - 183

Fecha: 5 de octubre de 2011

Tribunal de Apelaciones:

      Región Judicial de Caguas, Panel X

Juez Ponente:      Troadio González Vargas

Abogada de la Parte Peticionaria:

      Lcda. Ana Rosa Montes Arraiza
      Lcdo. Félix A. Cifredo Cancel

Oficina de la Procuradora General:

      Lcda. Eva S. Soto Castelló
      Procuradora General Auxiliar

Materia: Art. 5.01, 5.04, 5.07, 5.10 y 6.10 de la Ley de Armas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Certiorari

El Pueblo de Puerto Rico
      Recurrido

                              CC-2010-0395

        v.

  Rolando Eliecer Díaz
      Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 11 de octubre de 2011.

El presente recurso de *certiorari* nos brinda la oportunidad de reiterar y aclarar la normativa pautada en <u>Pueblo v. Pepín Cortes</u>, 173 D.P.R. 968 (2008). En particular, nos permite expresarnos sobre la carga probatoria del Ministerio Público en la vista de necesidad que debe celebrarse cuando el Estado solicita la exclusión del público de la vista preliminar porque presentará el testimonio de un agente encubierto. Asimismo, nos permite pautar sobre el análisis que debe ejercer el Tribunal de Primera Instancia para salvaguardar todos los intereses involucrados.

I

El 14 de diciembre de 2009, el Tribunal de Primera Instancia determinó causa probable para el arresto del Sr. Rolando Eliecer Díaz por violación a los Arts. 5.01, 5.04, 5.07, 5.10 y 6.01 de la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como Ley de Armas de Puerto Rico.[1] 25 L.P.R.A. sec. 455 *et sec.* La vista preliminar fue señalada para el 28 de enero de 2010.

El 28 de diciembre de 2009, el Ministerio Público presentó una moción al amparo de la Regla 23(c) de Procedimiento Criminal. 34 L.P.R.A. Ap. II. En ella, expuso que durante la vista preliminar presentaría los testimonios del agente Julio Báez Nieves y de un agente encubierto. Puntualizó que el agente 08NAI29 es un agente encubierto en funciones perteneciente a la División de Drogas y Narcóticos -región de Caguas- de la Policía de Puerto Rico, y que su testimonio en la vista preliminar versaría sobre hechos producto de sus gestiones investigativas. Por ello, en aras de garantizar la seguridad y vida del referido agente, y de proteger las investigaciones encubiertas que se encontraban en curso, el Estado le solicitó al foro primario que limitara el acceso del público a la vista preliminar únicamente durante el testimonio del agente encubierto. Atendido el

---

[1] Esta determinación de causa probable para el arresto fue hecha en ausencia del peticionario, debido a que el Ministerio Público presentó la denuncia del caso de autos en ausencia del peticionario en aras de proteger la identidad del agente encubierto.

petitorio, la vista de necesidad fue pautada para el 13 de enero de 2010.

Durante la vista de necesidad, el Ministerio Fiscal presentó como único testigo al agente Báez Nieves. Éste declaró estar adscrito a la División de Drogas y Narcóticos de la región de Caguas y ser la persona contacto del agente 08NAI29 durante la investigación criminal que originó el procedimiento de autos y dio base a la presentación de cargos criminales contra otros imputados.[2] Además, manifestó que el agente encubierto continúa laborando como tal para la Policía de Puerto Rico. Finalizado el testimonio del agente Báez Nieves, el foro de instancia declaró Con Lugar la solicitud del Ministerio Público y ordenó que la vista preliminar fuera cerrada únicamente mientras el agente encubierto ofreciera su testimonio.

Oportunamente, el imputado Eliecer Díaz presentó una solicitud de reconsideración y adujo que el referido dictamen atentaba contra su derecho a un juicio público. El 22 de enero de 2010 el foro primario emitió una resolución y en reconsideración, declaró *No Ha Lugar* la petición de cierre de la vista. Al así proceder, el foro de instancia concluyó que

> [d]e la prueba presentada por el Ministerio Público a través de su testigo Julio Báez Nieves, solamente podemos concluir que el agente encubierto 08NAI29 continúa ejerciendo sus labores como tal. No se

---

[2] Tomamos conocimiento judicial de los casos <u>Pueblo v. Luis A. Otero Lebrón</u>, Crim. Núm. E1VP200903087; <u>Pueblo v. Israel García García</u>, Crim. Núms. E1VP200903090, E1VP200903091, E1VP200903091, E1VP200903092, E1VP200903093, y E1VP200903099; los cuales fueron presentados a raíz de las gestiones encubiertas investigativas del agente 08NAI29, y quien, a su vez, ha sido anunciado como testigo de cargo en dichos procedimientos.

demostró por parte del Ministerio Público que este agente [esté] realizando investigaciones dentro de la misma Región (Caguas), o que dichas investigaciones estén relacionadas con los cargos que se radicaron, o que [involucren] el mismo tipo de acto delictivo con relación al trasiego de armas o drogas. No se demostró por parte del Ministerio Público que se hayan tomado medidas para proteger la identidad del agente ya que, a diferencia de otros casos, en las denuncias presentadas figura el nombre y [número] de placa reales del Agente encubierto. Tampoco fue materia de prueba que este agente recibiera algún tipo de amenaza hacia él o sus familiares. No se demostró que la vida de este agente estuviera en peligro ya fuera por la investigación en curso o que al prestar testimonio la investigación de la cual participa se vería afectada.[3]

En consecuencia, el Tribunal de Primera Instancia entendió que el Ministerio Público no probó ninguno de los criterios esbozados por este Tribunal en Pueblo v. Pepín Cortés y otros, supra. Por ello, concluyó que el Estado había incumplido con su carga probatoria; es decir, con el deber de demostrar que por ser un agente encubierto en funciones "el limitar el acceso al público en la vista preliminar constituía la alternativa menos abarcadora"[4] y que "la protección de ese interés debía ceder ante un derecho constitucional como el que nos ocupa".[5]

---

[3] Véase Apéndice de recurso de *certiorari*, pág. 32. El Tribunal de Primera Instancia también señaló estar consciente del impedimento del Ministerio Público en revelar información detallada sobre las investigaciones que llevaba en curso el agente encubierto. Sin embargo, el foro primario añadió que el Ministerio Público sí podía, de forma general, "poner al Tribunal en posición de determinar que en el curso y protección de las mismas, la seguridad del agente corre peligro haciendo necesaria la solicitud [de cierre]". Íd., pág. 32, nota 2.

Asimismo, el Tribunal de Primera Instancia indicó que aun cuando no compartía "el planteamiento de la defensa en cuanto a que el nombre y número de placa [contenidos en la denuncia] revelan la identidad del agente, ciertamente es evidencia de una medida de seguridad menos tomada por el estado para proteger la identidad". Íd., pág. 32, nota 3.

[4] Véase Apéndice de recurso de *certiorari*, pág. 32.

[5] Íd., págs. 32-33.

Inconforme, el 12 de febrero de 2010 la Procuradora General presentó una petición de *certiorari* ante el Tribunal de Apelaciones. En ella adujo que el foro de primera instancia erró al declarar *No Ha Lugar* su solicitud para que se excluyera al público de la vista preliminar únicamente mientras el agente encubierto testificara.

Así las cosas, el 30 de marzo de 2010 el foro apelativo intermedio dictó una sentencia mediante la cual revocó el dictamen del Tribunal de Primera Instancia. Al así hacerlo, señaló que durante la vista de necesidad la Fiscalía probó que el agente 08NAI29 aún continuaba en funciones y que ello constituía un interés apremiante a los fines de cumplir con la norma pautada en Pueblo v. Pepín Cortés, supra. En estas circunstancias, añadió el foro apelativo intermedio, no es necesario demostrar que dicho agente teme por su vida ni que su seguridad física o emocional corre peligro porque ello es inherente a la función encubierta que ejerce dicho agente.

Asimismo, el Tribunal de Apelaciones sostuvo que la solicitud del Estado se circunscribía al cierre parcial de la vista preliminar; es decir, el Ministerio Público solicitó que se excluyera al público de la vista únicamente mientras el agente 08NAI29 prestaba su testimonio. Por tal razón, el foro apelativo razonó que la solicitud se ajustaba a la normativa pautada en Pueblo v. Pepín Cortés, supra, toda vez que el cierre solicitado no es más amplio que lo necesario.

Además, el Tribunal de Apelaciones puntualizó que el "preservar y proteger la seguridad personal del agente encubierto, se torna, en un interés apremiante que requiere mayor protección que el menoscabo circunstancial y limitado del derecho del imputado a [un] juicio público".[6] Por ello, razonó que "el hecho de la identificación del agente en la denuncia reduce ciertamente la efectividad de la medida solicitada..., pero no la derrota totalmente, en la medida que es un hecho incontrovertido que aún el testigo continúa prestando ese tipo de servicio encubierto".[7] Consecuentemente, el foro apelativo intermedio coligió que para propósitos del caso de autos, "lo pertinente y determinante es el hecho de que, por las razones que sean, todavía el agente en cuestión presta estos servicios, por lo que su seguridad personal y emocional se encuentra aún comprometida".[8]

No conteste con esa determinación, el 10 de mayo de 2010 el peticionario presentó un recurso de *certiorari* ante este Tribunal. En su petición, afirma que el foro recurrido erró al ordenar que la vista preliminar fuese cerrada únicamente mientras el agente encubierto ofrecía su testimonio. Ello, a pesar que el Ministerio Público "no probó ni tan sólo uno de los criterios esbozados en [Pueblo v. Pepín Cortés, supra]". Posteriormente, el 1 de junio de 2010 el peticionario presentó

---

[6] Véase Apéndice de recurso de *certiorari*, pág. 85.

[7] Íd., pág. 85.

[8] Íd.

una moción en auxilio de jurisdicción y solicitó que ordenáramos la paralización de la vista preliminar pautada para el 7 de junio de 2010 mientras entendíamos el recurso de *certiorari*.

Subsiguientemente, el 4 de junio de 2010, emitimos una resolución mediante la cual ordenamos la paralización de la vista preliminar. Asimismo, le concedimos a la Procuradora General un término de quince días para que mostrara causa por la cual no se debía expedir el recurso de *certiorari* presentado por el peticionario y revocar la sentencia del Tribunal de Apelaciones.

Todas las partes han comparecido. Por ello, con el beneficio de sus argumentos, procedemos a resolver.

II

Como es sabido, la Sexta Enmienda de la Constitución de Estados Unidos expresa que "en todos los procedimientos criminales el acusado gozará del derecho a... un juicio público". Const. EE.UU., Enmd. VI. Este fue uno de los primeros derechos contenidos en la Sexta Enmienda que el Tribunal Supremo federal catalogó como "elemento esencial del debido proceso de ley y, por ello, aplicable a los Estados a través de la Decimocuarta Enmienda". In re Oliver, 333 U.S. 257 (1948); W. LaFave, J. Israel, N. King, O. Kerr, 6 Crim. Proc. § 24.1(a)(3d ed.). De igual forma, la Constitución de Puerto Rico garantiza que "[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público...". Const. E.L.A., Art. II, Sec. 11.

Es oportuno apuntalar que el derecho a un juicio público le pertenece al acusado. El público y la prensa, más bien, gozan de un derecho a "acceso a los juicios criminales" que tiene sus orígenes -y está cimentado- en la Primera Enmienda de la Constitución de Estados Unidos y en la Sec. 4 del Art. II de la Constitución de Puerto Rico, "así como también en el derecho de acceso a la información en manos del Estado, el cual hemos reconocido en nuestra jurisdicción como corolario del derecho a la libre expresión". Pueblo v. Pepín Cortés, supra, pág. 977; Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982). Véanse, además: López Vives v. Policía de P.R., 118 D.P.R. 219 (1987); Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982). "El carácter fundamental del derecho de acceso a los juicios penales a favor del público y de la prensa ha dado lugar a que se extienda este derecho a etapas anteriores al juicio. Waller v. Georgia, 467 U.S. 39 (1984); Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (Press-Enterprise I). Específicamente, se ha reconocido que el derecho del acceso alcanza procedimientos como la vista preliminar". Pueblo v. Pepín Cortés, supra, pág. 978; Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (Press-Enterprise Co. II).

> La exigencia de un juicio público es en beneficio del acusado; que el público pueda observar la forma en que él está siendo enjuiciado y no condenado injustamente mantiene a sus juzgadores atentos a la responsabilidad e importancia de sus funciones.
>
> Aparte de asegurar que el juez y el fiscal desempeñan sus funciones ministeriales responsablemente, el juicio

público fomenta la participación de los testigos y desalienta el perjurio.[9] (Citas omitidas)

A

En el pasado, la anterior Regla 23 de Procedimiento Criminal concebía la vista preliminar como una vista privada a la cual, como norma general, el público no tenía acceso. El precepto disponía que la vista preliminar "será privada a menos que al comenzar la misma la persona solicitare que fuere pública. La 'persona' se refiere al imputado". E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, pág. 51. Cónsono con ello, en El Vocero de P.R. v. E.L.A., 131 D.P.R. 356 (1992), rechazamos el *ratio decidendi* de Press Enterprise Co. II v. Superior Court, supra, y resolvimos que éste "no se aplicaba a la vista preliminar en Puerto Rico, por lo que la Regla 23 de Procedimiento Criminal, en cuanto dispone que la vista preliminar será privada a menos que el acusado la quiera pública, no viola la [Primera Enmienda]". E.L. Chiesa Aponte, op. cit., pág. 51.

No obstante lo anterior, en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993), el Tribunal Supremo federal dejó sin efecto el dictamen emitido en El Vocero de Puerto Rico v. E.L.A., supra, y declaró la inconstitucionalidad de nuestra antigua Regla 23 de Procedimiento Criminal. Como consecuencia de ello, mediante la Ley Núm. 197 de 12 de agosto de 1995,

---

[9] Press Enterprise Co. v. Superior Court, 464 U.S. 501 (1984).

nuestra Asamblea Legislativa enmendó la Regla 23 de Procedimiento Criminal para que la vista preliminar fuese pública. Así, en la Exposición de Motivos del estatuto el legislador declaró:

> Resulta imprescindible atemperar las disposiciones de la Regla 23 con la reciente determinación del Tribunal Supremo Federal para evitar la situación de que diferentes jueces puedan darle diferente interpretación a dicha decisión. Las enmiendas incorporadas al estatuto tienen el propósito de aclarar el alcance de la determinación jurisprudencial, brindando así uniformidad en el procedimiento criminal.
>
> .   .   .   .   .   .   .   .   .
>
> Las enmiendas incorporadas a la Regla 23 tienen el propósito de atemperar dicha disposición legal con la reciente determinación del Tribunal Supremo Federal al establecerse que las vistas preliminares serán de naturaleza pública y disponerse las circunstancias excepcionales cuando podrán ser privadas. 1995 (Parte 1) Leyes de Puerto Rico, págs. 976-978.

> Cónsono con esos propósitos, la Regla 23 de Procedimiento Criminal fue enmendada y, en lo pertinente, dispone lo siguiente:

> La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pública acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razonables que una vista privada para disipar tal probabilidad. En tales casos, la decisión del magistrado deberá fundamentarse en forma precisa y detallada.
>
> También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efectos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.

> Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente encubierto o un confidente que aún se encuentre en funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos. 33 L.P.R.A. Ap. II, R.23.

Del citado texto puede colegirse diáfanamente que la vista preliminar es de carácter público. Empero, la actual Regla 23 de Procedimiento Criminal, supra, reconoce cuatro supuestos en los que la vista puede celebrarse en privado; a saber: (1) cuando se pretenden proteger los derechos constitucionales del imputado a un juicio público, justo e imparcial; (2) cuando la vista privada sea necesaria para proteger cualquier otro interés de naturaleza apremiante; (3) cuando el Ministerio Público interese presentar el testimonio de un agente encubierto que aún se encuentre en funciones o de un confidente; y (4) cuando esté declarando la víctima de un caso de violación o de actos impúdicos o lascivos. Pueblo v. Pepín Cortés, supra, pág. 979.

B

En cuanto al primer supuesto enunciado (cuando se pretende proteger el derecho constitucional del imputado a un juicio público, justo e imparcial), en Press-Enterprise I v. Superior Court, supra, el Tribunal Supremo federal resolvió que el derecho a juicio público contenido en la Sexta Enmienda de la Constitución de Estados Unidos se extiende a los procedimientos de selección del jurado y que ello, como norma general, no atenta contra el derecho a un juicio justo e imparcial que cobija al acusado.

En el contexto fáctico el Sr. Albert Greenwood Brown, Jr., fue acusado de violar y asesinar a una niña adolecente. Antes de comenzar la desinsaculación del jurado (*voir dire*), Press-Enterprise Co. compareció ante la corte de primera instancia del Estado de California y solicitó acceso a ese procedimiento. En apoyo de su petitorio, adujo que el público tenía un derecho absoluto de acceder al juicio del señor Greenwood Brown, Jr., y que éste comenzaba -propiamente- con el *voir dire*. El Ministerio Público, por su parte, arguyó que si el Tribunal le concedía el acceso a la prensa, las contestaciones de los jurados potenciales adolecerían del candor necesario para asegurarle al acusado su derecho a un juicio justo. Press-Enterprise I v. Superior Court, supra, pág. 503.

Examinados los argumentos de las partes, el foro primario permitió que Press-Enterprise Co. asistiera a los procedimientos preliminares de desinsaculación del jurado. Sin embargo, señaló que el procedimiento sería cerrado al público tan pronto las partes comenzaran a interrogar a los jurados potenciales sobre sus cualificaciones para imponer la pena de muerte y sobre cualquier otra área especial. El procedimiento de desinsaculación en su totalidad duró seis semanas y tan sólo tres días fueron abiertos al público. Íd.

Luego de constituido el jurado, Press-Enterprise Co. le solicitó al tribunal de instancia que revelara en su totalidad la transcripción del *voir dire*. Ante tal solicitud, la defensa de Greenwood Brown, Jr., y el Ministerio Público alegaron que

ello atentaría contra del derecho a la privacidad del jurado. De igual forma, el Ministerio Público añadió que los jurados habían contestado las preguntas que se les hicieron bajo una "promesa implícita de confidencialidad". El foro primario denegó la solicitud de Press-Enterprise Co. Íd., págs. 503-504.

Una vez sentenciado, el señor Greenwood Brown, Jr., Press-Enterprise Co., solicitó nuevamente la transcripción completa del *voir dire*. El foro primario, nuevamente, denegó la solicitud. Íd., pág. 504.

El Tribunal Supremo federal señaló que las circunstancias bajo las cuales la prensa y el público pueden ser excluidos de un juicio criminal son limitadas, como también indicó que la justificación del Estado denegando el acceso debe ser una de alta importancia. Así, cuando el Estado pretenda denegar el acceso del público con el propósito de impedir la divulgación de información sensitiva, debe demostrarse que la exclusión responde a un interés apremiante y que este proceder está diseñado estrechamente en consecución de ese interés. Press-Enterprise Co., I v. Superior Court, supra, págs. 509-510, citando a Globe Newspaper Co. v. Superior Court, supra. Véase, además, Pueblo v. Pepín Cortés, supra, pág. 983.

En armonía con lo anterior, el Máximo Foro federal razonó que el tribunal de instancia erró al concluir que la celebración pública de los procedimientos de desinsaculación atentaba contra el derecho del acusado a un juicio justo e imparcial y el derecho de privacidad de los potenciales jurados. Añadió que el

foro primario no consideró otras alternativas al cierre prolongado disponibles para proteger los intereses esgrimidos, por lo que no se justificaba el cierre. Press-Enterprise Co., I v. Superior Court, supra, págs. 510-511.

Posteriormente, en Waller v. Georgia, supra, el Tribunal Supremo federal estableció que la celebración cerrada e injustificada de una vista de supresión de evidencia atentaba contra el derecho del imputado a un juicio público.

El marco fáctico del citado precedente, en síntesis, es el siguiente. Para el año 1981, la Policía del Estado de Georgia grabó un sinnúmero de conversaciones, de las cuales se desprendió un gran esquema de lotería clandestina basado en el tráfico y volumen de los valores negociados en el Mercado de Valores del Estado de Nueva York (NYSE, por sus siglas en inglés). Como resultado de estos hallazgos, treinta y seis imputados fueron acusados bajo el "Racketeer Influenced and Corrupt Organizations Act." (RICO, por sus siglas en inglés) del Estado de Georgia,[10] y por cometer los delitos de "apuestas comerciales" y "divulgación de información sobre apuestas".[11] Waller v. Georgia, supra, pág. 41.

Iniciado el procesamiento criminal en su contra, los imputados solicitaron del tribunal que suprimiera las grabaciones. Adujeron que las órdenes judiciales no fueron obtenidas mediando causa probable, estuvieron basadas en

---

[10] Ga. Code Ann. §§ 16-14-1 a 16-14-15 (1982, Supp. 1983).

[11] Ga. Code Ann. §§ 16-12-22 y 16-12-28 (1982).

información general y que las grabaciones de las conversaciones no fueron supervisadas.

Por su parte, el Estado solicitó del Tribunal que se excluyera al público de la vista de supresión de evidencia. En apoyo a su contención, alegó que bajo las leyes de Georgia "cualquier publicación" de las comunicaciones grabadas que no fuese necesaria y esencial conllevaría su inadmisibilidad como evidencia. Íd., págs. 41-42. Además, el Ministerio Público señaló que las grabaciones involucraban a varias personas acusadas, pero no enjuiciadas, y otras que no fueron acusadas. Consecuentemente, razonó que la publicación de las grabaciones contaminaría la evidencia obtenida y ésta no podría ser utilizada en procedimientos posteriores. Luego de escuchar a las partes, el Tribunal ordenó el cierre de la vista. Íd., pág. 42.

La celebración de la vista de supresión duró siete días y tan solo dos horas y media fueron destinadas a escuchar las grabaciones obtenidas.[12] Íd. Así, luego de celebrado el juicio, los imputados fueron exonerados de los cargos bajo el "RICO Act" del Estado de Georgia pero convictos bajo los cargos de "apuestas comerciales" y "divulgación de información sobre apuestas". Íd., pág. 43.

---

[12] El resto de la vista versó sobre el procedimiento seguido para obtener la autorización para grabar las comunicaciones, las órdenes de allanamiento, y la forma en que éstas fueron ejecutadas.

A raíz de lo anterior, y ante la admisión del Ministerio Público que una gran cantidad de los documentos allanados eran de naturaleza personal y no estaban relacionados a crimen alguno, el Tribunal ordenó la supresión de dichos documentos.

El Tribunal Supremo del Estado de Georgia confirmó las convicciones. En cuanto a la exclusión del público durante la celebración de la vista de supresión de evidencia, dispuso que el tribunal de instancia ponderó adecuadamente el derecho de los imputados a un juicio público y el derecho a la intimidad de los otros. Íd.

Atendido el caso por el Tribunal Supremo federal, se reconoció que el derecho a un juicio público contenido en la Sexta Enmienda de la Constitución de Estados Unidos se extiende a las vistas de supresión de evidencia. Íd. De este modo, reiteró a Press Enterprise I v. Superior Court, supra, y señaló que la norma general de apertura sólo podrá ser circunvalada ante la existencia de un interés apremiante fundado en que el cierre de la vista es esencial para la preservación de un valor superior y en que ese remedio no es más amplio de lo debido. Este interés debe ser articulado en conjunto con circunstancias suficientemente específicas como para permitirle a un tribunal de superior jerarquía revisar la adecuacidad de la orden de clausura. Íd., pág. 45, citando a Press Enterprise I v. Superior Court, supra, pág. 510.

Al aplicar los criterios afirmados en Press Enterprise I v. Superior Court, supra, el Tribunal Supremo federal razonó que la clausura total de la vista de supresión de evidencia fue injustificada y pautó los factores que rigen el análisis de controversias de esta naturaleza. Estos son: (1) la parte que solicita la clausura de la vista debe presentar un interés

apremiante que, de no ordenar el cierre de la vista, será lesionado; (2) el cierre no debe ser más amplio de lo necesario para proteger ese interés; (3) el tribunal de instancia debe considerar las alternativas disponibles al cierre; y (4) el tribunal debe hacer determinaciones adecuadas para sustentar su determinación". Waller v. Georgia, supra, pág. 48. A esos efectos, el Tribunal expresó que "el único interés presentado por el Ministerio Público lo fue el que la 'publicación innecesaria' de las grabaciones impediría su uso en procedimientos criminales posteriores". Íd. Sin embargo, aun cuando "bajo determinadas circunstancias este interés puede que justifique el cierre parcial de una vista de supresión de evidencia... en esta ocasión el Estado no fue específico en cuanto a quién se le quebrantaría su privacidad, cómo se infringiría este derecho y qué porciones de las grabaciones eran las detrimentales". Íd.

Consecuentemente, el Tribunal Supremo federal razonó que las determinaciones del tribunal de instancia fueron generales y no justificaron el cierre total de la vista de supresión. Íd. Además, advirtió que ese foro "no consideró alternativas al cierre total e inmediato de la vista; entre ellas: dirigir al Ministerio Público para que proveyera más detalles sobre la necesidad del cierre; ordenar el cierre de la vista sólo en aquellos momentos en que se pudieran afectar los intereses que se quieren proteger". Íd., págs. 48-49.

Luego de <u>Waller v. Georgia</u>, supra, el Tribunal Supremo Federal tuvo ante sí <u>Press-Enterprise Co. II v. Superior Court</u>, supra.  Allí, resolvió específicamente que el público y la prensa gozan de un derecho de acceso a las vistas preliminares bajo la Primera Enmienda de la Constitución de Estados Unidos y que ello no atenta, como norma general, en contra del derecho del imputado a un juicio justo e imparcial.

En aquella ocasión, el 23 de diciembre de 1981, el Estado de California presentó una denuncia en contra del Sr. Robert Díaz imputándole doce cargos de asesinato.  Alegadamente, el señor Díaz, enfermero de profesión, asesinaba a sus víctimas administrándole grandes cantidades del narcótico lidocaína. <u>Press-Enterprise Co. II v. Superior Court</u>, supra, pág. 3.

En la vista preliminar, el imputado le solicitó al tribunal de instancia que ordenara el cierre de la vista y excluyera al público de la sala.  Ello, debido a que entendía que la exclusión del público era necesaria para proteger su derecho a un juicio justo e imparcial.  El tribunal de instancia concedió el cierre solicitado.  Precisó que el caso había adquirido un alto grado de notoriedad y que ello hacía necesario el cierre de la vista.  La celebración de la vista preliminar duró cuarenta y un días.[13]  Íd., págs. 3-4.

---

[13] La mayoría de la prueba presentada fue científica, pero también se presentó el testimonio de varios de los compañeros del imputado que trabajaron durante los turnos en que las víctimas fueron asesinadas.  Además, el imputado no desfiló prueba, pero sí contrainterrogó vigorosamente a los testigos presentados.

Luego que el tribunal de instancia determinara causa para acusar al imputado, Press-Enterprise Co. solicitó que se revelara la totalidad de las transcripciones de la vista preliminar. Su solicitud fue denegada. Subsiguientemente, el Ministerio Público presentó una moción en la que hizo una solicitud similar a la de Press-Enterprise Co.[14] El acusado se opuso y señaló que la revelación de la transcripción generaría una publicidad perjudicial. Íd., pág. 5.

Analizados los planteamientos de las partes, el foro primario indicó que aun cuando el contenido de la transcripción no era inflamatorio, existía una probabilidad razonable de que su descubrimiento le causara perjuicio al acusado y lesionara su derecho a un juicio justo e imparcial. Por ello, denegó la solicitud del Ministerio Público y de Press-Enterprise Co. Íd.

Considerada la controversia por el Tribunal Supremo del Estado de California, este foro resolvió que la Primera Enmienda de la Constitución de Estados Unidos no contempla un derecho de acceso a las vistas preliminares. Añadió que el acceso reconocido por el Tribunal Supremo federal en Press-Enterprise Co. I v. Superior Court, supra; y Globe Newspaper Co. v. Superior Court, supra, sólo se extendía a juicios criminales. De igual forma, el Máximo Foro Judicial de California señaló que las razones para el cierre invocadas en Press-Enterprise Co. I v. Superior Court, supra; y en Globe Newspaper Co. v. Superior

---

[14] Press-Enterprise Co. se unió a la solicitud del Ministerio Público.

Court, supra, no eran similares a las presentadas en esa
ocasión.  Por ello, este foro concluyó que ni el Ministerio
Público ni Press-Enterprise Co. habían demostrado que su
solicitud no le causaba perjuicio al acusado, conforme lo
establecido en la sec. 868 del Código Penal de California.[15]
Press-Enterprise Co. II v. Superior Court, supra, pág. 5.

Insatisfecha, Press-Enterprise Co. presentó un recurso de
*certiorari* ante el Tribunal Supremo federal, quien expidió dicho
recurso y revocó el dictamen emitido por el Tribunal Supremo de
California.  Al así hacerlo, el Máximo Foro federal expresó que
el derecho a un juicio público del acusado bajo la Sexta
Enmienda no protege menos que el derecho de la prensa y del
público bajo la Primera Enmienda.[16]  Press-Enterprise Co. II v.
Superior Court, supra, pág. 7.  "Cuando un acusado se opone a
que la vista de supresión sea cerrada, ésta debe ser abierta a
menos que la parte que solicita el cierre presente un interés
apremiante, el cual lo más probable será lacerado" a no ser que
se excluya al público de la vista.  Íd.

Cónsono con lo anterior, el Tribunal Supremo federal
resaltó que el derecho a juicio público del acusado no estaba en
pugna puesto que fue el propio acusado quien solicitó el cierre

---

[15] Cal.Penal Code Ann. § 868 (West 1985).

[16] Inicialmente, el Tribunal Supremo Federal razonó que la controversia ante
su consideración no era académica.  Ello, pues aun cuando la transcripción de
la vista preliminar fue revelada al público con posterioridad a la renuncia
del acusado de su derecho a un juicio por jurado, lo cierto resultaba ser que
la controversia era capaz de repetirse y evadir revisión judicial.  Íd., pág.
6, citando a Globe Newspaper Co. v. Superior Court, supra; Gannett Co. v.
DePasquale, 443 U.S. 368 (1979).

de la vista preliminar, sino que el eje central de la controversia lo era el derecho del público bajo la Primera Enmienda de la Constitución de Estados Unidos. Íd. Por ello, luego de examinar el origen y naturaleza de la vista preliminar bajo el sistema procesal penal de California,[17] el Tribunal indicó que la prensa y el público gozan de un derecho de acceso a los procedimientos criminales. Íd., pág. 13. Así, al concluir el cierre de la vista preliminar por cuarenta y un días no estuvo justificado, el Tribunal señaló lo siguiente:

> Debido a que el derecho de acceso bajo la Primera Enmienda se extiende a las vistas preliminares bajo la sec. 958 del Código Penal de California, tales procedimientos no pueden ser celebrados a puerta cerrada a menos que se hagan determinaciones específicas y se demuestre que el cierre es esencial para preservar un interés superior y que tal proceder está diseñado estrechamente para proteger dicho interés. Íd.

Por ello, si el interés alegado es el derecho del acusado a un juicio justo e imparcial, la vista preliminar deberá ser cerrada sólo si se esbozan determinaciones específicas que demuestren, en primer lugar, que existe una probabilidad sustancial que tal derecho será lacerado por la publicidad de la vista, evitable mediante el cierre de la misma; y, en segundo lugar, las alternativas existentes al cierre no protegen adecuadamente el referido derecho. (Traducción nuestra.) Press-Enterprise Co. II v. Superior Court, supra, citando a Press-Enterprise Co. I v. Superior Court, supra; Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581 (1980).

---

[17] Véase, Press-Enterprise Co. II v. Superior Court, supra, págs. 8-13.

C

En Puerto Rico no hemos escatimado a la hora de adoptar los pronunciamientos del Tribunal Supremo federal reseñados. Así, en cuanto al tercer supuesto discutido (cuando el Ministerio Público interese presentar el testimonio de un confidente o de un agente encubierto que aún se encuentre en funciones), en Pueblo v. Pepín Cortés, supra, resolvimos que ante una solicitud del Ministerio Público para que se excluya al público de la vista preliminar porque se presentará el testimonio de un agente encubierto, no procede que el Tribunal de Primera Instancia ordene -de forma automática- el cierre de la vista. Más bien, señalamos que el foro primario deberá celebrar una vista de necesidad en la cual dilucide la procedencia del cierre y las razones que el Ministerio Público presente para ello.

En esa ocasión, luego de encontrar causa probable para el arresto de los imputados, el Tribunal de Primera Instancia emitió una resolución mediante la cual dividió a los imputados en varios grupos y señaló a cada grupo una fecha individual para la celebración de la vista preliminar. Llegado el día señalado para la vista de los grupos I y II, el Ministerio Público solicitó que se excluyera al público de la sala para que el foro primario determinara si era necesario o no el cierre de la misma en aras de proteger la identidad y seguridad del agente encubierto cuyo testimonio iba a ser presentado como prueba. La defensa de los imputados se opuso a la solicitud del Ministerio

Público y adujo que le asistía el derecho a una vista preliminar pública. Íd., pág. 973.

Luego de examinar los argumentos de las partes, el Tribunal de Primera Instancia denegó la solicitud del Ministerio Público por entender que fue tardía. En reconsideración, reafirmó su determinación y ordenó dar comienzo a la vista preliminar. Así las cosas, el agente encubierto entró a sala escoltado por varios agentes y con su rostro cubierto por una capucha negra. A preguntas del tribunal, el agente contestó que no estaba dispuesto a testificar sin la capucha. Ante ello, el foro primario determinó que no existía causa probable para acusar a los imputados de los grupos I y II dada una ausencia total de prueba. Íd., pág. 974.

Por su parte, en cuanto al grupo III, días antes de la fecha señalada para la celebración de la vista preliminar, el Ministerio Público presentó una moción en la que solicitó la celebración de una vista de necesidad para determinar si procedía la exclusión del público dado a que deseaba presentar el testimonio del agente encubierto. La defensa de los imputados se opuso y alegó que la naturaleza de la vista era pública, que los imputados tenían un derecho a un juicio justo e imparcial y que el público tenía derecho a observar los procedimientos.[18] Íd.

---

[18] La defensa de los imputados adujo, además, que la solicitud del Ministerio Público fue tardía y que no les fue notificada. Pueblo v. Pepín Cortés, 173 D.P.R. 968, 974 (2008).

El Tribunal de Primera Instancia accedió a lo solicitado por el Ministerio Público. Durante la vista de necesidad se presentó el testimonio del Agente Félix Disdier González, quien al momento de emitir su testimonio trabajaba en la División de Drogas y Narcóticos de Caguas y fungía como la persona contacto del agente encubierto. Así, el agente Disdier González testificó que el agente encubierto continuaba en funciones y realizaba investigaciones y transacciones relacionadas con el trasiego ilegal de sustancias controladas. Escuchado el testimonio del agente Disdier González, el foro primario determinó que el cierre de la vista preliminar no estaba justificado. Íd., pág. 975.

Inconforme, el Ministerio Público acudió ante el Tribunal de Apelaciones en ambos casos. Luego de consolidarlos, el foro apelativo intermedio dictó una sentencia y confirmó los dictámenes recurridos. Íd., págs. 975-976.

Llegado el caso ante nuestra consideración, y luego de exponer un cuidadoso análisis de los derechos constitucionales involucrados y su jurisprudencia interpretativa, señalamos que "ante el reclamo del imputado de su derecho a un juicio justo, toda solicitud de cierre de la vista preliminar deberá evaluarse restrictivamente a favor de su apertura, según un escrutinio estricto". Íd., pág. 986. Al así hacerlo, adoptamos expresamente los factores delineados por el Tribunal Supremo federal en <u>Waller v. Georgia</u>, supra, y apuntalamos que en nuestro ordenamiento jurídico no hay cabida para "un decreto

automático que ordene el cierre de la vista preliminar según la Regla 23(c) de Procedimiento Criminal, supra". Íd., págs. 986-987.

Acorde con lo anterior, señalamos que, en los casos en que el imputado invoque su derecho a un juicio público para oponerse a una solicitud del Ministerio Público mediante la cual solicite el cierre de la vista preliminar porque desea presentar en privado el testimonio de un agente encubierto que aún se encuentra en funciones, el tribunal deberá celebrar una vista de necesidad para dilucidar la necesidad de la solicitud. Asimismo, especificamos que en esa vista el Ministerio Público deberá demostrar que el agente encubierto aún se encuentra en funciones y que el cierre de la vista preliminar es la alternativa menos abarcadora para proteger su seguridad.

En cambio, cuando se trata de un agente encubierto que no está en funciones, "el Ministerio Público deberá demostrar que existe un interés apremiante que justificaría su solicitud, como lo podría ser preservar la seguridad física o emocional del agente y que la limitación del acceso del público no será más amplia de lo necesario para proteger ese interés".[19] Íd., pág. 987.

Igualmente, para que la decisión del Tribunal de Primera Instancia constituya un dictamen ecuánime y salvaguarde

---

[19] Resolvimos, además, que la solicitud del Ministerio Público debe estar fundamentada y, salvo justa causa, deberá notificársele al imputado dentro de un tiempo razonable antes de la celebración de la vista preliminar. Pueblo v. Pepín Cortés, supra, pág. 988.

adecuadamente los intereses constitucionales involucrados, añadimos que en la vista de necesidad el foro primario podrá tomar en consideración factores como los siguientes: (1) si el agente encubierto continúa trabajando en investigaciones de esa naturaleza; (2) si continúa trabajando en los casos o las investigaciones relacionadas al caso objeto de la vista de necesidad; (3) si su identidad ha sido revelada; (4) las medidas o precauciones que ha tomado el Estado para preservar la identidad y seguridad del agente; (5) si el agente ha recibido amenazas; y (6) si el agente teme por su vida o seguridad física o emocional, o la de su familia.[20] Íd., pág. 988.

Consecuentemente, al aplicar la normativa pautada, concluimos que el Tribunal de Primera Instancia había excedido sus límites de discreción y que el Tribunal de Apelaciones erró al confirmar su dictamen. Por ello, revocamos la sentencia dictada por el foro apelativo intermedio y ordenamos la devolución del caso para que se celebrara una vista de necesidad.

D

Como podemos apreciar, cuando el Ministerio Público solicita del Tribunal que excluya al público de la sala debido a que presentará como testigo a un agente encubierto, es necesario que se celebre una vista en la cual se demuestre que el cierre es imperativo para proteger la vida y seguridad del testigo.

---

[20] El testimonio del agente encubierto no es necesario para demostrar estos factores, aunque nada impide su comparecencia y testimonio en la vista de necesidad. Pueblo v. Pepín Cortés, supra, pág. 988.

Pueblo v. Pepín Cortés, supra.  El cierre no es automático.  Sin embargo, al presente no habíamos tenido la oportunidad de abundar sobre la carga probatoria que el Ministerio Público debe satisfacer en esa vista y sobre el análisis que debe efectuar el Tribunal de Primera Instancia para alcanzar la determinación más adecuada a las circunstancias presentadas.  Por ello, y debido a que nuestros pronunciamientos en Pueblo v. Pepín Cortés, supra, se circunscribieron en resaltar lo imperioso de la vista de necesidad, examinaremos la casuística federal en aras de deslindar una norma coherente que se acople a nuestro ordenamiento procesal criminal.

En Ayala v. Speckard, 131 F.3d 62 (2do Cir. 1997), el Tribunal de Apelaciones federal para el Segundo Circuito resolvió que el tribunal de distrito actuó correctamente al excluir el público de la sala mientras el agente testificaba debido a que, entre otras cosas, éste continuaba en funciones como agente encubierto en la misma región donde ocurrieron los actos delictivos.  Ello, como medida efectiva para proteger la vida y seguridad del agente encubierto sin incurrir en una violación al derecho del imputado a un juicio público.

En aquella ocasión, durante la ejecución de lo que se conoce como un operativo "adquisición y arresto" (buy and bust), la Policía del Estado de Nueva York arrestó a los Sres. Steven Ayala, Charles Okonowo y Howard Pearson por vender sustancias narcóticas ilegales.  Durante el juicio, el tribunal de instancia ordenó la exclusión del público de la sala únicamente

mientras los agentes encubiertos testificaban. Terminada la celebración del juicio, los señores Ayala, Okonowo y Pearson fueron declarados culpables, por lo que apelaron sus convicciones. Éstas fueron confirmadas.

El Tribunal de Apelaciones federal para el Segundo Circuito mediante recurso de *habeas corpus*, confirmó las convicciones recurridas. En su dictamen, señaló que el tribunal sentenciador actuó correctamente al ordenar, en tres ocasiones distintas, la exclusión del público de la sala mientras testificaban los agentes encubiertos que aún continuaban en funciones. Ello, en aras de proteger la vida y seguridad de los agentes. Ayala v. Speckard, supra, pág. 72.

En su análisis, examinó los factores reconocidos en Waller v. Georgia, supra. En cuanto al primero de ellos, señaló que el interés aducido por el Ministerio Público —mantener la efectividad de las operaciones encubiertas y salvaguardar la vida y seguridad del agente— es uno extremadamente sustancial, por lo que el tribunal de instancia actuó correctamente al concluir que ese interés se afectaría seriamente si se le hubiera requerido a los agentes que testificaran en corte abierta. Añadió que

> creemos que el curso más sensible es que el juez de instancia reconozca que la norma general es favorecer la apertura de los juicios, y requerir evidencia persuasiva que demuestre un riesgo serio de perjuicio sobre un interés importante a la hora de ordenar el cierre. Sin embargo, el juez debe tener en cuenta que mientras más extenso sea el cierre solicitado, mayor debe ser el riesgo y la gravedad del perjuicio que ese

interés pudiera sufrir.   (Traducción nuestra.)   <u>Ayala v. Speckard</u>, supra, pág. 70.

Asimismo, en cuanto al segundo factor consignado en <u>Waller v. Georgia</u>, supra (el cierre solicitado no debe ser más amplio de lo necesario para proteger el interés), el foro apelativo federal añadió que el cierre ordenado por el tribunal de instancia fue únicamente mientras los agentes encubiertos testificaban y que tal remedio limitado estuvo justificado y no fue más amplio de lo necesario.   Íd., págs. 72-73.

Posteriormente, en <u>Glaude v. Artuz</u>[21], se resolvió que el tribunal de distrito actuó correctamente al rechazar el recurso de *habeas corpus* presentado por el peticionario en el cual alegó que su derecho a un juicio público fue violado por el cierre parcial ordenado.   Ello, pues la prueba desfilada en la vista de necesidad celebrada satisfizo los factores subrayados en <u>Waller v. Georgia</u>, supra.

De los antecedentes fácticos se desprende, que un equipo de agentes de la división de narcóticos persiguieron al Sr. Anthony Glaude hasta un apartamento ubicado en el segundo piso de un edifico de Brooklyn, N.Y.   Una vez allí, los agentes encontraron narcóticos (crack) y parafernalia para su uso.   También, encontraron al peticionario escondido al lado de la estufa. Para el  juicio, el Ministerio Público solicitó que se excluyera al público de la sala mientras el agente encubierto emitía su

---

[21] 1999 U.S. App. LEXIS 18147, *1,189 F. 3d 460 (2do Cir. 1999). Opinión no publicada.   Nótese que su uso es permitido bajo la Regla 32.1 de la Corte Federal de Apelaciones para el Segundo Circuito.

testimonio.   Ante esa solicitud, el tribunal *sua sponte* celebró
una vista de necesidad para determinar si el cierre era
necesario.[22]  Glaude v. Artuz, supra.

Durante la vista de necesidad, la cual fue celebrada en
privado, el agente encubierto testificó que trabajaba para la
División de Narcóticos del Departamento de Policía de Nueva York
y que, en capacidad de agente encubierto disfrazado de
indigente, comúnmente adquiría drogas ilegales.   Por ello,
añadió, que temía por su vida y seguridad.   Tras escuchar el
testimonio del agente encubierto, el tribunal de instancia
ordenó el cierre del juicio únicamente mientras éste
testificara.[23]  Íd.

---

[22] Antes de celebrar la vista de necesidad, el Ministerio Público adujo que el agente encubierto había realizado aproximadamente 260 compras de narcóticos, que tenía casos pendientes en los tribunales de Brooklyn y Manhattan y que posiblemente sería reasignado al equipo de operaciones tácticas de Brooklyn. Glaude v. Artuz, 189 F.3d 460, 1 (2do Cir. 1999).

[23] Al así ordenarlo, el tribunal de instancia señalo lo siguiente:

"Luego de interrogar al agente, y basándome en lo que me ha dicho, básicamente que ha hecho más de 200 compras y que la gran mayoría de esos casos criminales están pendientes, en adición al hecho de que él aún se encuentra en funciones encubiertas, me veo obligado a tomar conocimiento judicial de lo siguiente: (1) los procedimientos criminales en los cuales están involucrados los asesinos del agente Byrnes, quien fue asesinado a la orden de un capo para darle una lección a la policía sobre el "me tumbas uno mío, yo te tumbo uno tuyo", aún están pendientes; y (2) las declaraciones hechas por varias personas de la uniformada sobre los recientes asesinatos de agentes de la policía.

Además, el tribunal toma conocimiento judicial de la muerte del agente Hatcher (DEA), quien fue asesinado en Staten Island mientras fungía como agente encubierto y cuyo asesino está siendo perseguido; y todo esto, obviamente, tiene que estar en las mentes de cada agente encubierto; y ello asusta; y es increíble cómo estos hombres y mujeres tienen el valor de salir a la calle y hacer lo que tienen que hacer día a día; y nuestra sociedad, incluyendo nuestras cortes, ciertamente no deben poner la vida de estas personas en más riesgo del que está, por lo que encuentro que existen suficientes razones convincentes para conceder lo solicitado; en específico, la protección de la vida de este agente encubierto, la protección de la efectividad de su trabajo, y la

Celebrado el juicio, Glaude fue declarado culpable del delito de posesión de sustancias controladas en primer grado por el uso criminal de parafernalia para el uso de narcóticos. Consecuentemente, fue sentenciado a cumplir una pena de reclusión de dieciocho años. Posteriormente, Glaude presentó un recurso de *habeas corpus* ante el Tribunal de Distrito de Estados Unidos para el Distrito Este de la ciudad de Nueva York. Este foro judicial concluyó que sus alegaciones carecían de mérito. Íd., pág. 3.

El Tribunal de Apelaciones federal para el Segundo Circuito, por su parte, confirmó el dictamen emitido por el tribunal de distrito. Al aplicar los factores de Waller v. Georgia, supra, señaló, en cuanto al primer factor, que cuando se pondera si ese factor se inclina a favor del cierre de la vista, debe reconocerse, en primer lugar, que la norma general favorece la apertura de los juicios. De solicitarse su cierre, debe presentarse evidencia que demuestre el riesgo sustancial de perjuicio que algún interés importante ha de sufrir si no se ordena la exclusión del público de la sala. Por ello, "mientras más extenso sea el cierre solicitado, mayor debe ser el riesgo y la gravedad del perjuicio que ese interés pudiera sufrir". Glaude v. Artuz, supra, pág. 3, citando a Ayala v. Speckard, supra, pág. 70.

_____

protección de la efectividad del trabajo de todas las personas que se desempeñan en esa posición. Por lo que el cierre de sala por varios minutos mientras el agente testifica constituye un precio pequeño a pagar por esa efectividad". (Traducción nuestra.) Glaude v. Artuz, supra, pág. 2.

En referencia al segundo elemento Waller v. Georgia, supra, el foro apelativo federal advirtió que el interés del Ministerio Público por proteger la vida y seguridad del agente encubierto es suficientemente persuasivo (*compelling*) como para justificar el cierre solicitado, pues éste no era más amplio de lo necesario. En ese contexto, el tribunal expresó que durante la vista de necesidad el agente encubierto testificó que continuaba en funciones y que temía por su vida y seguridad. En consideración a lo anterior, confirmó el dictamen del tribunal de distrito pues existía justificación para ordenar el cierre limitado del juicio. Glaude v. Artuz, supra, pág. 4.[24]

En Bowden v. Keane, 237 F.3d 125 (2do Cir. 2001), el Tribunal de Apelaciones federal para el Segundo Circuito alcanzó la misma conclusión que en Glaude v. Artuz, supra. En esa ocasión, durante la ejecución de un operativo de "adquisición y compra", el Sr. Vernon Bowden fue arrestado en la calle número 126 de Manhattan por haber vendido tres "caplets" de "crack" a un agente encubierto, el detective Billingy. Bowden v. Keane, supra, pág. 128.

---

[24] Véanse, además: Nieblas v. Smith, 204 F.3d 29 (2do Cir. 1999) (se resolvió que el tribunal de distrito actuó correctamente al denegar un recurso de *habeas corpus* dado a que el cierre del juicio mientras el agente encubierto testificaba, no violó el derecho del acusado a un juicio público. Ello, puesto que en la vista de necesidad celebrada, el agente declaró que continuaba en funciones encubiertas en el área sur de Brooklyn y que por su seguridad, su identidad no debía ser revelada); Brown v. Artuz, 283 F.3d 492 (2do Cir. 2002) (en donde se confirmó un dictamen del tribunal de distrito denegando un recurso de *habeas corpus* luego de resolver que el cierre parcial del juicio durante el testimonio de un agente encubierto no fue una aplicación irrazonable de Waller v. Georgia, supra. Ello pues, durante la vista de necesidad el agente encubierto declaró que aún continuaba en funciones en la misma región que el acusado fue arrestado y que temería por su seguridad si emitía su testimonio en corte abierta).

Iniciado el proceso judicial, el Estado solicitó el cierre del juicio mientras el agente encubierto ofrecía su testimonio. En atención a ello, el tribunal de instancia celebró una vista de necesidad en la que testificó el detective Weathers, otro agente encubierto compañero del detective Billingy, quien lo asistió en el operativo. El referido agente acotó que él, actualmente, participaba en operaciones criminales, que había sido amenazado a muerte por los narcotraficantes, quienes sospechaban que él era policía y que había alrededor de veinticinco a treinta sospechosos que no habían sido arrestados. Íd.

Escuchado el testimonio de Weathers, el foro primario concedió el cierre parcial solicitado por el Ministerio Público. En particular, el juez de instancia puntualizó lo siguiente:

> Entiendo que ahora el expediente de autos corrobora el cierre de la sala.... Creo que [el expediente] habla por sí sólo, sin dejar de mencionar la forma en que la información se disemina a través de este sistema. Para mí, es perfectamente concebible que si no se ordena el cierre solicitado, se conocerá que un agente encubierto testificará en corte abierta y él será identificado; por lo que no es necesario que el público esté presente. Bowden v. Keane, supra, pág. 128, citando a Bowden v. Keane, 85 F.Supp.2d 246, 248-249 (S.D.N.Y. 2000).

Celebrado el juicio, que fue cerrado únicamente mientras el agente Weathers testificaba, el señor Bowden fue encontrado culpable por la venta de sustancias controladas y fue sentenciado a reclusión.

El Tribunal de Apelaciones federal para el Segundo Circuito, resolvió que el Tribunal de Distrito de Estados Unidos

para el Distrito Sur de Nueva York actuó correctamente al denegar el recurso de *habeas corpus* presentado por el señor Bowden. Bowden v. Keane, 237 F.3d 125, 128 (2001). El foro apelativo federal señaló, como norma general, que la Sexta Enmienda de la Constitución de Estados Unidos le garantiza a los imputados de delito que sus juicios serán públicos y que este derecho aplica a los Estados a través de la Decimocuarta Enmienda. Bowden v. Keane, supra, págs. 128-129, citando a Duncan v. Louisiana, 391 U.S. 145, 148 (1968). Sin embargo, añadió que este derecho no es absoluto y, en ciertas instancias, un tribunal puede ordenar que se excluya al público de la sala sin violar la Constitución de Estados Unidos. Bowden v. Keane, supra, pág. 129.

A esos efectos, el foro apelativo federal razonó que el tribunal de instancia actuó correctamente al aplicar la normativa de Waller v. Georgia, supra, ordenar el cierre parcial del juicio y excluir al público únicamente mientras el agente encubierto testificaba. Tal proceder estuvo justificado debido a que el agente encubierto había testificado que aún continuaba en funciones, éste fue amenazado a muerte y, más importante aún, el remedio solicitado (cierre del juicio únicamente mientras el agente declaraba) no era más amplio de lo debido. Bowden v. Keane, supra, pág. 130.

E

La normativa trazada por la jurisprudencia descrita demuestra que las instancias en las cuales se solicite el cierre

de un juicio criminal, o de algún procedimiento anterior a éste, deben ser analizadas rigurosamente. Así, debido a que cada circunstancia que se presenta ante el tribunal es particular, **el análisis debe ser uno caso a caso.**

Cónsono con lo enunciado, como norma general, nuestro ordenamiento jurídico favorece la apertura de los juicios. Ello debe ser así, toda vez que el derecho a un juicio público constituye, claramente, un derecho fundamental. Const. EE.UU., Enmd. VI; Const. E.L.A., Art. II, Sec. 11; In re Oliver, supra; LaFave, op cit.; Chiesa Aponte, op cit., Vol. II, pág. 185. Empero, cuando se solicita excluir al público de sala, el juez de instancia debe celebrar una vista de necesidad[25] en la cual tiene que analizar lo siguiente: (1) si la parte que solicita el cierre presenta un interés apremiante, el cual será perjudicado de no concederse el cierre; (2) si el cierre solicitado no es más amplio de lo necesario para proteger ese interés; (3) las alternativas razonables disponibles. Además, como factor adicional, el tribunal deberá realizar determinaciones adecuadas y suficientemente detalladas para sostener el remedio concedido. Waller v. Georgia, supra; Pueblo v. Pepín Cortés, supra. Véanse, además: Bowden v. Keane, supra; Glaude v. Artuz, supra; Ayala v. Speckard, supra.

Ahora bien, en las instancias en que el Ministerio Fiscal solicite la exclusión del público de la sala debido a que

---

[25] Véanse: Pueblo v. Pepín Cortés, supra; People v. Hinton, 31 N.Y.2d 71 (1972) (caso medular del Estado de Nueva York de donde surge el pseudónimo de las vistas de necesidad: *Hinton Hearings*).

presentará como testigo a un agente encubierto, el juez de instancia deberá tener presente la normativa pautada en Pueblo v. Pepín Cortés, supra, en la vista de necesidad que se celebre. Esto es, si el Ministerio Público anuncia que presentará el testimonio de un agente encubierto **que aún sigue en funciones**, deberá demostrar (1) que el agente aún se encuentra en funciones; y (2) que el cierre es la alternativa menos abarcadora para proteger la vida y seguridad de dicho agente. Íd., pág. 987. Nótese que en estas instancias la vida y seguridad del agente constituyen, propiamente, ese interés apremiante reconocido como primer factor en Waller v. Georgia, supra. Véanse: Bowden v. Keane, supra; Glaude v. Artuz, supra; Ayala v. Speckard, supra.

En cambio, cuando el Ministerio Público anuncia como testigo a un agente encubierto **que no se encuentra en funciones**, deberá demostrar (1) que existe un interés apremiante que justifica su solicitud de cierre; y (2) que la limitación del acceso del público no será más amplia de lo necesario para proteger dicho interés. Pueblo v. Pepín Cortés, supra, pág. 987. Adviértase que bajo estas circunstancias, a diferencia de la anterior, la Fiscalía deberá presentar prueba sobre la existencia de un interés apremiante que justifique la concesión del cierre solicitado (primer factor esbozado en Waller v. Georgia, supra) puesto que el agente que testificará ya no se encuentra en funciones y ello presupone que su vida y seguridad no se encuentran en peligro. Sin embargo, ello no es óbice para

que se pueda desfilar prueba que demuestre lo contrario y que el interés apremiante lo es el "preservar la seguridad física o emocional del agente". Pueblo v. Pepín Cortés, supra, pág. 987.

Por su parte, en cuanto a la amplitud del remedio solicitado, (segundo factor esbozado en Waller v. Georgia, supra) nótese que en ambas instancias el Ministerio Público debe demostrar que el cierre es la alternativa menos abarcadora -no es más amplio de lo necesario- para proteger la vida y seguridad del agente encubierto. En ese sentido, el juez de instancia debe tener presente que "mientras más extenso sea el cierre solicitado, mayor debe ser el riesgo y la gravedad del perjuicio" que el interés a protegerse pueda sufrir. Ayala v. Speckard, supra, pág. 70. Es decir, debe existir una proporción racional entre el derecho del imputado a un juicio público y el cierre solicitado, como también éste debe estar correlacionado con el interés que se quiere proteger mediante la exclusión del público de la sala. Por ello, está en manos del juez de instancia ponderar minuciosamente estas variables para así alcanzar la solución que más se adecúe a las circunstancias particulares del caso.[26]

---

[26] Claro está, en las ocasiones en que la prensa o ciudadanía se opongan al cierre solicitado por el Ministerio Público, el juez de instancia debe tener presente que el público y la prensa gozan de un derecho fundamental de "acceso a los juicios criminales", el cual emana de la Primera Enmienda de la Constitución de Estados Unidos y de la Sec. 4 del Art. II de la Constitución de Puerto Rico. Press Enterprise Co. II, supra; Globe Newspaper Co. v. Superior Court, supra; Press Enterprise I, supra. Véase, además: Pueblo v. Pepín Cortés, supra. Así, el juez de instancia deberá ponderar entre el "derecho de acceso" de la prensa y ciudadanía, y la prueba que presente el Ministerio Público en apoyo de los factores esbozados en Waller v. Georgia, supra. Véanse: Press Enterprise Co. II, supra; Pueblo v. Pepín Cortés, supra.

Finalmente, en las dos instancias antes descritas el foro primario debe tomar en consideración las alternativas disponibles al cierre solicitado (tercer factor enunciado en Waller v. Georgia, supra), y deberá realizar determinaciones adecuadas y suficientes para sostener el cierre solicitado (cuarto factor esbozado en Waller v. Georgia, supra).

III

El peticionario aduce que el Tribunal de Apelaciones erró al dictar una sentencia, revocar al Tribunal de Primera Instancia y señalar que procedía el cierre de la vista preliminar durante el testimonio del agente encubierto. Añade que durante la vista de necesidad el Ministerio Público no probó "ni tan solo uno de los criterios esbozados en Pueblo v. Pepín Cortés, supra". No le asiste la razón. Veamos.

En la resolución emitida por el Tribunal de Primera Instancia, ese foro señaló que la prueba presentada en la vista de necesidad sólo demostró que el agente 08NAI29 continuaba en funciones. No obstante, razonó que el Ministerio Público no probó ninguno de los factores sugeridos en Pueblo v. Pepín Cortés, supra, y, consecuentemente, incumplió con su carga probatoria de demostrar que el cierre solicitado no es más amplio de lo necesario. Por ello, el foro primario declaró, en reconsideración, *No Ha Lugar* la solicitud de cierre presentada por el Ministerio Público.

Este raciocinio constituye un error manifiesto. En primer lugar, resulta contradictorio señalar, por un lado, que el

Ministerio Público demostró que el agente encubierto aún continúa en funciones y luego colegir, por otro lado, que no se probó **ninguno** de los factores esbozados en Pueblo v. Pepín Cortés, supra. Tal conclusión omite que "demostrar que el agente encubierto continúa en funciones", constituye, propiamente, uno de los factores reconocidos en Pueblo v. Pepín Cortés, supra.

En segundo lugar, el Tribunal de Primera Instancia incidió al concluir que el Estado incumplió con su carga probatoria al no demostrar que "limitar el acceso al público en la vista preliminar constituía la alternativa menos abarcadora" y que "la protección de ese interés debía ceder ante un derecho constitucional como el que nos ocupa". Tal proceder es uno desatinado. No toma en consideración que en las instancias en que el Ministerio Público anuncia que presentará el testimonio de un agente encubierto la carga probatoria exigida por Pueblo v. Pepín Cortés, supra, sólo requiere que el Ministerio Público demuestre: (a) que el agente encubierto aún se encuentra en funciones; y (b) que el remedio solicitado es la alternativa menos abarcadora para proteger la seguridad de dicho agente. Pueblo v. Pepín Cortés, supra, pág. 988. Así, aun cuando el derecho del imputado a un juicio público es uno fundamental, cuando se demuestra que el agente encubierto continúa en funciones resulta evidente que su vida y seguridad, como la de su familia, corren peligro; y ello constituye un interés apremiante que debe ponderarse adecuadamente. Véanse, Pueblo v.

<u>Garay López</u>, 2011 T.S.P.R. 66, págs. 6-9; <u>Glaude v. Artuz</u>, ante, nota 22. Véase, además: <u>Pueblo v. Luciano Arroyo</u>, 83 D.P.R. 573, 582 (1961) ("Los jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería").

Además, al declarar *No Ha Lugar* la solicitud de cierre, el foro primario tampoco tomó en consideración que el cierre solicitado en el caso de autos es uno parcial y no total. Es decir, el Ministerio Público solicitó que se excluyera al público de la sala **únicamente mientras el agente encubierto emite su testimonio**. Tal remedio es racionalmente proporcional al derecho del imputado a un juicio público y está correlacionado con el interés que el Ministerio Público pretende proteger (vida y seguridad del agente encubierto que aún continúa en funciones) mediante el remedio que solicita. <u>Ayala v. Speckard</u>, supra, pág. 70.

Adviértase, además, que en esta ocasión no se trata de un cierre total de la vista preliminar o de la exclusión del público de la sala por un tiempo prolongado. Véanse: <u>Press Enterprise Co. I v. Superior Court</u>, supra (en donde el cierre de los procedimientos de desinsaculación del jurado duró seis semanas y tan solo tres días fue abierto al público); <u>Waller v. Georgia</u>, supra, (en donde la celebración cerrada de una vista de supresión de evidencia duró siete días y tan solo dos horas y media fueron destinadas a la presentación de la prueba que sustentó dicho cierre); <u>Press Enterprise Co. II v. Superior</u>

Court, supra, (en donde el cierre de la vista preliminar duró cuarenta y un días). Por el contrario, el remedio solicitado en el caso de autos es uno temporero cuya duración incide en lo mínimo sobre el derecho del imputado a un juicio público. En conclusión, el cierre solicitado no es más amplio de lo necesario para proteger la vida y seguridad del agente encubierto que testificará en la vista preliminar.[27]

Asimismo, entendemos que el Tribunal de Primera Instancia erró al sustentar su dictamen, en parte, en la revelación de la identidad del agente encubierto por razón de haber incluido su nombre y número de placa reales en la denuncia presentada. Aun cuando las medidas tomadas para proteger la identidad del agente encubierto constituyen un factor a considerarse, tal proceder no convierte en inoficiosa la solicitud de cierre del Ministerio Público.[28] Véase, U.S. v. Smith, 780 F.2d 1102, 1108 (1985) (en donde se resolvió que la solicitud del Ministerio Público no se desvirtualiza simplemente porque el acusado conozca el nombre e identidad reales del confidente).

En cuanto al resto de los factores sugeridos en Pueblo v. Pepín Cortés, supra, pág. 988 (si el agente encubierto ha sido amenazado y si continúa trabajando en los casos o investigaciones relacionados al caso objeto de la vista de

---

[27] Somos conscientes que el remedio aquí concedido se limita al cierre de la vista preliminar única y exclusivamente mientras el agente encubierto emite su testimonio. Así, una vez culmine dicho testimonio la vista preliminar deberá abrirse nuevamente.

[28] Distinto hubiera sido si el agente encubierto hubiese testificado en sala abierta en alguno de los otros procedimientos criminales pendientes.

necesidad), el Tribunal de Primera Instancia concluyó que el Ministerio Público no desfiló prueba que los demostrara. Empero, debemos tener presente que en su Escrito en Cumplimiento de Orden, el Estado puntualizó que el agente encubierto es testigo esencial en varios procedimientos criminales adicionales que están pendientes en el distrito judicial de Caguas[29] y que son producto de sus funciones encubiertas. Tal y como adelantamos, tomamos conocimiento judicial de estos hechos bajo la Regla 11(A)(2), (B) y (D) de las Reglas de Evidencia de 1979(equivalente a la Regla 201 de las Reglas de Evidencia de 2009).

Contrario a la opinión disidente, este Tribunal reafirma que la vida y seguridad de un agente encubierto que continúa trabajando en investigaciones de esa naturaleza, constituye un interés apremiante del Estado. Ante el justo balance de los intereses en juego, ¿no es acaso el derecho a la vida el de mayor jerarquía en nuestro ordenamiento constitucional? Contestamos en la afirmativa. No podemos ser tan ingenuos en pensar que la vida y la integridad física de un agente que se adentra en el corazón mismo de la conspiración y penetra los más oscuros recintos del crimen organizado no está en inminente riesgo.

Cónsono con lo anterior, colegimos que el Tribunal de Apelaciones actuó correctamente al dictar sentencia y revocar el

---

[29] Véase, Escrito en Cumplimiento de Orden, pág. 9, nota 3.

dictamen emitido por el Tribunal de Primera Instancia. El foro apelativo intermedio no abusó de su discreción al concluir que las circunstancias presentadas en el caso de autos son meritorias y justifican que se conceda el cierre parcial solicitado por el Ministerio Público.

IV

Por los fundamentos enunciados, expedimos el recurso de *certiorari* presentado por el peticionario y confirmamos la sentencia dictada por el Tribunal de Apelaciones. Por consiguiente, ordenamos la devolución del expediente de autos al foro de primera instancia para que continúen los procedimientos de la vista preliminar conforme a lo aquí pautado.

Se dictará sentencia de conformidad.


                                        Edgardo Rivera García
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
    Recurrido

        v.

Rolando Eliecer Díaz          CC-2010-0395          Certiorari

SENTENCIA

San Juan, Puerto Rico, a 11 de octubre de 2011.

Por los fundamentos enunciados, expedimos el recurso de *certiorari* presentado por el peticionario y confirmamos la sentencia dictada por el Tribunal de Apelaciones. Por consiguiente, ordenamos la devolución del expediente de autos al foro de primera instancia para que continúen los procedimientos conforme a lo aquí pautado.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión disidente a la que se unen el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                        CC-2010-395

Rolando Eliecer Díaz

    Peticionario

Opinión disiente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 11 de octubre 2011

La controversia ante este Tribunal requería que evaluáramos si se justifica el cierre de la sala durante el testimonio de un agente encubierto durante la vista preliminar cuando lo único que se demostró fue que el agente continúa labores como encubierto. Por tratarse de un derecho de rango constitucional, estimo que debe probarse que existe un riesgo particular o real a la vida o seguridad del agente encubierto y que el cierre de la sala es la medida necesaria para salvaguardar ese interés. Por entender que el camino que el Tribunal traza hoy

socava el derecho fundamental a un juicio público, disiento.

Repasemos los hechos que suscitaron la presente controversia.

## I.

El 14 de diciembre de 2009, el Tribunal de Primera Instancia encontró causa probable para arresto contra el señor Rolando Eliecer Díaz por infracciones a los artículos 5.01, 5.04, 5.07, 5.10 y 6.01 de la Ley de Armas. 25 L.P.R.A. secs. 458, 458c, 458f, 458i y 459. Pautada la fecha de la vista preliminar, el Ministerio Público presentó una *Moción Solicitando Vista Preliminar en Privado al amparo de la Regla 23(c) de las de Procedimiento Criminal*. En específico, solicitó que se limitara el acceso al público durante el testimonio del agente encubierto 08NAI29, ya que alegadamente éste continuaba trabajando como agente encubierto en la región judicial de Caguas.

El foro primario celebró la vista de necesidad correspondiente. El Ministerio Público presentó el testimonio del agente Julio A. Báez Nieves, quien era el agente contacto del agente encubierto al momento de éste recopilar la prueba para procesar a Eliecer Díaz. Finalizado el testimonio del agente Báez Nieves, el foro primario declaró con lugar la solicitud del Ministerio Público, por lo que ordenó que el testimonio del agente encubierto se presente en privado cuando se celebre la vista preliminar. La defensa del Sr. Eliecer Díaz solicitó

reconsideración del dictamen emitido. El foro primario emitió una resolución en la que acogió el planteamiento de la defensa y declaró no ha lugar la petición del Ministerio Público.

En su resolución, el foro primario señaló que, de la prueba presentada en la vista, solamente se puede concluir que el agente aún realiza labores como encubierto. Hizo constar que no se demostró que las investigaciones en las que el agente trabaja actualmente se llevan a cabo en la misma región donde ocurrieron los hechos imputados, que haya alguna relación entre el testimonio a ofrecer y las investigaciones actuales, que haya recibido alguna amenaza o que su vida se encuentre en peligro por la investigación o que vaya a estarlo si presta testimonio. Añadió que el Ministerio Público no tomó medidas particulares para proteger la identidad del agente y que se incluyó su número de placa y su nombre real en las denuncias. En fin, el Tribunal de Primera Instancia concluyó que no se prestó evidencia suficiente para justificar el cierre de la sala durante el testimonio del agente encubierto en la vista preliminar.

El foro primario también apuntó que estaba consciente de que los detalles de las investigaciones que podría estar realizando actualmente el agente 08NAI29 no podían ser revelados, pero opinó que el Ministerio Público sí podía -de forma general- poner en posición al tribunal de determinar que en el curso y protección de las mismas, la seguridad del agente corría peligro de modo que fuera

necesaria la solicitud de cierre. Igualmente, determinó que, aunque no compartía el argumento de la defensa de que incluir el nombre y número de placa verdadero del agente en las denuncias presentadas revelaban necesariamente su identidad, es prueba de una medida de seguridad menos tomada por el Estado para proteger la identidad del agente.

Inconforme con la determinación del Tribunal de Primera Instancia, el Ministerio Público acudió al Tribunal de Apelaciones, mediante auto de *certiorari*. Dicho foro revocó la determinación del foro primario. Determinó que en la vista de necesidad, el Ministerio Público probó que el agente encubierto continuaba "en funciones". Añadió que en circunstancias en que el agente se encuentra en funciones, no es necesario demostrar que éste teme por su vida o que su seguridad física o emocional está en peligro, ya que ello es inherente a la función que ejerce. Además, indicó que el Ministerio Público sólo solicitó la exclusión del público durante el testimonio del agente encubierto, lo cual cumple con las directrices de este Tribunal, en cuanto a que el cierre de la vista no sea más amplio de lo necesario. El foro *a quo* expresó que aunque el cierre parcial de la vista preliminar menoscaba el derecho a juicio público del acusado, ello no incide radicalmente en otras garantías constitucionales como el derecho a un juicio justo e imparcial, la presunción de inocencia y el debido proceso de ley.

De esta sentencia, Eliecer Díaz acudió ante este foro mediante *certiorari* y moción de solicitud de paralización

de los procedimientos en auxilio de jurisdicción. En su recurso, el peticionario aduce que el Tribunal de Apelaciones erró al revocar al Tribunal de Primera Instancia, pues no se cumplió con los factores esbozados en *Pueblo v. Pepín Cortés*, 173 D.P.R. 968 (2008), por lo que se debió denegar la solicitud del Ministerio Público.

Examinado el recurso, paralizamos los procedimientos en el foro primario el 4 de junio de 2010 y le ordenamos a la Procuradora General a que mostrara causa por la cual no debíamos expedirlo y revocar la sentencia del Tribunal de Apelaciones. La Procuradora General compareció en cumplimiento de nuestra orden y alegó, por vez primera, que el agente encubierto fue amenazado de muerte mientras se procesaban otros sujetos cuyos casos fueron investigados por el mismo agente.

## II.

La Opinión del Tribunal correctamente reconoce que, por versar este caso sobre un derecho fundamental, la limitación a ese derecho debe evaluarse de forma rigurosa, caso a caso. Sin embargo, al aplicar esta norma a los hechos del caso, desvirtúa lo preceptuado en *Pueblo v. Pepín Cortés*, *ante*, respecto al análisis que el Tribunal de Primera Instancia debe hacer al determinar si se concede el cierre de sala durante el testimonio del agente encubierto. Ello es así, pues sugiere que una vez se cumple con demostrar que hay un interés apremiante el análisis se dirige a la proporción racional entre la amplitud del cierre solicitado y la gravedad del posible perjuicio.

Ello, sin duda, tiene el efecto de flexibilizar el estándar requerido por exigencia constitucional.

Ciertamente, cuando un agente ejerce funciones de encubierto existen intereses apremiantes que el Estado debe salvaguardar: la vida y la seguridad del agente y la integridad de las investigaciones en curso. Sin embargo, ello no es suficiente para restringir el derecho a juicio público. No basta con probar que el testigo aún funge como agente encubierto. Es necesario que los hechos del caso demuestren que el testimonio en corte abierta por parte del agente encubierto pondría en riesgo alguno de estos intereses. Probar que el testigo aún funge como agente encubierto no justifica *per se* que se limite el acceso del público a la vista preliminar. Así lo resolvimos en *Pueblo v. Pepín Cortés*, *ante*. En la medida que sugiere que es razonable cerrar la sala cada vez que va a testificar un agente encubierto, el análisis de la Opinión choca con lo decidido en este precedente.

En *Pueblo v. Pepín Cortés*, *ante*, sostuvimos que toda solicitud de cierre de la vista preliminar por parte del Ministerio Público deberá evaluarse restrictivamente a favor de su apertura, utilizando para ello un escrutinio estricto. Así, se requiere demostrar que la exclusión solicitada es necesaria para salvaguardar un interés apremiante y que esa medida está estrechamente diseñada para proteger ese interés. Citando al Tribunal Supremo de los Estados Unidos en *Waller v. Georgia*, 467 U.S. 39 (1984), adoptamos los siguientes requisitos para evaluar

una solicitud de esta índole: (1) la parte que interese el cierre de la vista deberá exponer un interés apremiante; (2) el cierre no será más amplio que lo necesario para proteger ese interés; (3) el tribunal deberá considerar alternativas razonables al cierre; y (4) el tribunal deberá realizar determinaciones adecuadas para sostener el cierre. *Pueblo v. Pepín Cortés*, *ante*, págs. 986-87.

Resolvimos, además, que ante una solicitud de cierre de la vista preliminar o del juicio durante el testimonio de un agente encubierto, el Tribunal está obligado a celebrar una vista de necesidad en la cual se tomarán en consideración los siguientes factores para determinar si ésta se concede o no: (1) si el agente continúa trabajando en investigaciones de esa naturaleza; (2) si continúa trabajando en casos o investigaciones relacionadas al caso objeto de la vista de necesidad; (3) si su identidad ha sido revelada; (4) las medidas o precauciones que ha tomado el Estado para preservar la identidad o seguridad del agente; (5) si el agente ha recibido amenazas; y (6) si el agente teme por su vida o su seguridad física o emocional o la de su familia. *Pueblo v. Pepín Cortés*, *ante*, pág. 988.

Al exponer los factores antes enunciados, rechazamos el lenguaje de la Regla 23(c) de Procedimiento Criminal que establecía una exclusión automática del público de la vista preliminar -a pedido del Ministerio Público- cuando se interesara prestar testimonio de un agente encubierto que aún se encontrara en funciones. *Véase,* Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Indicamos que

"no cabe duda de que la posibilidad de un decreto automático que ordene el cierre de la vista preliminar al amparo de la Regla 23(c) de Procedimiento Criminal, *ante*, no encuentra apoyo en nuestro ordenamiento constitucional". *Pueblo v. Pepín Cortés*, *ante*, pág. 982.

Conforme a lo anterior, el Ministerio Público tiene la carga de probar en la vista de necesidad correspondiente, que existe un interés apremiante del Estado en celebrar la vista preliminar en ausencia de público, y que dicha medida es la menos abarcadora para proteger este interés. Los factores antes enunciados no constituyen una lista de cotejo taxativa que tenga que ser textualmente cumplida en todos los casos, sino que son elementos que ayudan al juzgador a determinar si el Ministerio Público ha cumplido con su obligación de demostrar la existencia de un riesgo a un interés apremiante que valide la restricción al derecho a juicio público del acusado e igualmente al derecho de acceso a los procedimientos criminales de la ciudadanía y de la prensa. *Véase*, *Pueblo v. Pepín Cortés*, *ante*, pág. 988; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Press Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984); *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, (1986); *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993).

Desde *Pueblo v. Pepín Cortés*, queda claro que la solicitud de cierre de la sala por razón del testimonio de un agente encubierto no puede concederse automáticamente. Así pues, es necesario evaluar las particularidades del

caso para poder determinar que, en efecto, la seguridad personal del agente o las investigaciones en curso se pondrían en riesgo si el testimonio se ofrece en corte abierta. Sin ese eslabón que relacione la medida solicitada con el interés que se desea proteger no se justifica la limitación al derecho fundamental a juicio público. Por esta razón el test de *Waller v. Georgia* exige que se consideren otras alternativas al cierre de la sala. Asimismo, en *Pueblo v. Pepín Cortés*, establecimos que cuando el agente encubierto continúa en funciones como encubierto se tiene que probar que el cierre solicitado es la medida menos abarcadora para proteger el interés en cuestión.

Es evidente que el mero hecho de continuar en funciones como agente encubierto no es suficiente para conceder el cierre. En esos casos, la vista de necesidad se dirige a probar ese factor conector entre el interés apremiante y el remedio solicitado, según las circunstancias particulares del caso. Con este propósito, en *Pueblo v. Pepín Cortés*, *ante*, esbozamos los factores que el tribunal debe evaluar para determinar si el testimonio del agente en corte abierta pone en peligro un interés apremiante del Estado. Como es de notar, elementos como una relación estrecha entre las investigaciones en curso y la que desembocó en la denuncia del imputado o una cercanía geográfica entre las investigaciones podrían demostrar una necesidad de protección que no existe si las

investigaciones no se relacionan o se distancian geográficamente.

Pese a lo anterior, la Opinión interpreta a *Pueblo v. Pepín Cortés* de forma tal que establece que cuando el agente se encuentra en funciones no es necesario presentar prueba adicional que justifique el cierre.[30] Ello, pues determina que "aun cuando el derecho del imputado a un juicio público es uno fundamental, cuando se demuestra que el agente encubierto continúa en funciones resulta evidente que su vida y seguridad, como la de su familia, corren peligro; y ello constituye un interés apremiante que debe ponderarse adecuadamente".[31] Esta regla *per se* que establece el Tribunal nos coloca al margen tanto de nuestra Constitución, como de la de Estados Unidos. *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993)

Como se ha señalado, si bien es cierto que existe un interés apremiante del Estado en proteger al agente encubierto y las investigaciones en curso, todavía el Ministerio Público tendría que demostrar que el testimonio en corte abierta pondría en peligro ese interés. El Tribunal no aborda este asunto, por lo que determina que el interés en proteger la vida de un agente encubierto es suficiente para justificar el cierre. Pasa directamente a evaluar si hay una proporcionalidad racional entre el remedio solicitado -cerrar la sala durante el testimonio del agente- y el interés que se interesa salvaguardar.

---

[30] Opinión mayoritaria, pág. 38.
[31] Opinión mayoritaria, pág. 41.

Así, concluye que cerrar la sala solamente mientras se emite el testimonio del agente encubierto es un remedio relacionado al interés que se desea proteger y que es racionalmente proporcional al derecho del imputado a un juicio público.

El elemento que se enfatiza es sobre la duración del cierre, pues el Tribunal indica que el foro primario no tomó en consideración que el cierre solicitado era parcial. Valga aclarar que cuán amplio es el cierre de la sala no incide sobre la justificación para tomar esta acción, sino sobre el cuarto factor de *Waller*: que el cierre no sea más abarcador de lo necesario. Previo a esta evaluación sobre la amplitud del cierre se requería una determinación de necesidad del cierre de la sala. El Tribunal de Primera Instancia no consideró este aspecto porque entendió que el Ministerio Público no lo puso en posición para concluir que el agente corría un peligro particular, por lo que no había necesidad de cerrar la sala.

El cierre de la sala no puede decretarse de forma automática cuando se ofrece el testimonio de un agente encubierto. Al realizar el análisis del caso, el foro primario entendió que no se le colocó en posición para afirmar que había un peligro a la vida o seguridad del agente. No es suficiente con un testimonio en que se asevera que el agente continúa fungiendo como encubierto sin que se conozca si quiera en qué tipo de investigación o en qué área se llevan a cabo estas investigaciones. Por tanto, no era necesario evaluar otras alternativas al

cierre de la sala o si el cierre era lo menos abarcador posible.

Incluso, si consideráramos que se probó que el interés apremiante ameritaba protección en cuanto al testimonio, el Ministerio Público no cumplió con demostrar que el cierre era la alternativa menos abarcadora para protegerlo, pues no ofreció alternativas al tribunal. Aun así, la Opinión concluye, mediante una retórica difusa e incongruente, que si lo único que se cierra es el testimonio del agente encubierto se cumple con el test de *Waller*.

Finalmente, el Tribunal expresa que el foro primario no erró, pues no tuvo ante su consideración las alegaciones de amenaza a la vida del agente que la Procuradora General señala en su Escrito en Cumplimiento de Orden ante esta Curia. Estas expresiones son ciertamente alarmantes. El Tribunal confirma la actuación del Tribunal de Apelaciones a base de unos hechos que se alegan por vez primera ante este Foro. Este proceder atenta contra principios básicos de nuestro sistema judicial. Es ante el Tribunal de Primera Instancia que se desfila la prueba que sustenta las alegaciones de las partes, es ése el foro competente para realizar determinaciones de hechos. La tarea revisora de los tribunales apelativos se limita a la decisión impugnada y la evidencia relacionada que se haya presentado en el foro inferior. No nos confiere la autoridad para tomar por ciertas las alegaciones que presentan las partes en sus escritos, cuando la parte contraria no ha tenido oportunidad de refutar con otra prueba ni el foro primario

ha pasado juicio sobre ellas.  La deferencia que merecen las determinaciones de hechos del Tribunal de Primera Instancia exige que nos circunscribamos a analizar si su actuación se justificaba conforme a los hechos presentados y probados ante ese foro.  *Pueblo v. Falcón Negrón*, 126 D.P.R. 75 (1990).

Acoger ese planteamiento en esta etapa implicaría dejar inoperante la vista de necesidad que se llevó a cabo.  Por imperativo del debido proceso de ley, la parte contraria tiene derecho a que se le brinde la oportunidad en una vista de refutar con evidencia una alegación de esa naturaleza.  Por tanto, es la vista de necesidad donde se debió presentar cualquier evidencia pertinente para la determinación de necesidad del cierre de la sala, de otro modo se reduce esta exigencia del derecho a juicio público en un procedimiento pro forma.

**III.**

En el presente caso, el Ministerio Público solicitó el cierre de la vista preliminar mientras testifica el agente encubierto 08NAI29.  El Tribunal de Primera Instancia, conforme a nuestros pronunciamientos en *Pueblo v. Pepín Cortés*, *ante*, celebró una vista de necesidad para auscultar la razonabilidad del pedido del Estado.

De acuerdo a la evidencia presentada en la vista de necesidad, el Ministerio Público sólo pudo probar, mediante el testimonio del agente Báez Nieves, que el agente 08NAI29 todavía se encontraba en funciones como agente encubierto.  Si bien es cierto que la solicitud contenía una alegación

de que el agente continuaba labores en Caguas, este hecho no se probó. No se presentó evidencia sobre el tipo de investigaciones en que estaba trabajando o si se relacionaban con los cargos imputados al Sr. Eliecer Díaz. Tampoco se consignó que éste haya recibido amenazas o que temiera por su seguridad o la de su familia.

A base de dichas determinaciones de hecho, el foro primario concluyó que el Ministerio Público no cumplió con su carga de probar la necesidad de proteger un interés apremiante mediante el cierre de la vista preliminar durante el testimonio del agente 08NAI29. No erró al así concluir. Al examinar las determinaciones de hecho consignadas en la resolución del foro primario, somos del criterio que lo probado en la vista de necesidad fue insuficiente para establecer la necesidad de mantener cerrada la vista preliminar durante el testimonio del mencionado agente. No se presentó prueba que relacione el testimonio del agente con un riesgo al interés apremiante, por lo que no se puede validar la restricción al derecho a juicio público del acusado.

No obstante, como indicamos anteriormente, el Tribunal de Apelaciones revocó al foro de instancia y este Tribunal confirma su actuación. Fundamentan su proceder en que el Ministerio Público probó que el agente 08NAI29 todavía se encontraba en funciones y que la solicitud de exclusión del público era solamente durante el testimonio del agente, no durante toda la vista preliminar. Reiteramos que el hecho de que un agente encubierto aún se mantenga "en funciones",

de suyo, no es suficiente para validar la ausencia de público de una vista preliminar o juicio.

Resolver de esa manera significaría que ante un reclamo del Ministerio Público de que testificará un agente encubierto que aún se encuentra en funciones, el tribunal debe desalojar automáticamente al público de la vista. Eso fue, precisamente, lo que catalogamos como constitucionalmente impermisible en *Pueblo v. Pepín Cortés*, pues lo impedía tanto el derecho a juicio público del acusado como el derecho de la ciudadanía y de la prensa en presenciar los procedimientos criminales, al amparo de los derechos de libertad de expresión y de prensa. *Pueblo v. Pepín Cortés, ante.* Aunque los factores incluidos en *Pueblo v. Pepín Cortés* no constituyen una lista de cotejo taxativa, ciertamente es necesario probar algo más que simplemente establecer que el agente encubierto aún se encuentra en funciones. Ello no ocurrió aquí.

No hay duda de que la labor de los agentes encubiertos es un arma de investigación necesaria para esclarecer la comisión de ciertos delitos que se distinguen por su característica esencial de clandestinidad y dicha función está revestida de cierta peligrosidad. *Pueblo v. Carballosa y Balzac*, 130 D.P.R. 842, 851 (1992). No obstante, como establecimos en *Pueblo v. Pepín Cortés*, aun cuando la protección de estos agentes puede constituir un interés apremiante del Estado, es necesario demostrar en una vista de necesidad que en el caso específico se justifica el cierre de la vista preliminar al público y que

esa es la medida menos abarcadora para lograr el interés estatal. No podemos olvidar que se trata de dejar de lado derechos constitucionales de la más alta jerarquía, como lo son el derecho del acusado a juicio público y las libertades de expresión y prensa. Por lo tanto, en ningún escenario el cierre es automático con sólo establecer que el agente encubierto se encuentra "en funciones", sino que es necesario analizar los factores establecidos en *Pueblo v. Pepín Cortés*, y todos aquellos que puedan ser pertinentes al caso, con el propósito de determinar si la medida solicitada es necesaria o adelanta, en el caso particular, el interés apremiante.

El Tribunal fundamenta su Opinión en que procede conceder el pedido por ser razonable, por ser la solicitud de cierre de la vista preliminar parcial, únicamente durante el testimonio del agente 08NAI29. No tiene razón. Como es de notar, dicha medida va dirigida a demostrar que la limitación a los derechos constitucionales concernidos no es más abarcadora de lo necesario para proteger el interés estatal. Lo que ocurre es que en el presente caso no se cumplió con el paso anterior, esto es, demostrar la necesidad del cierre para proteger el interés apremiante del Estado. Como indicamos anteriormente, no es suficiente demostrar que el agente encubierto está en funciones, sino que hay que analizar los factores expuestos en *Pueblo v. Pepín Cortés* para auscultar si se justifica el cierre de la vista preliminar. Al analizar los factores concernidos en este caso, concluimos -al igual que el foro de instancia-

que no se cumplió con el estándar de escrutinio estricto. Por lo tanto, la prueba presentada por el Estado no fue suficiente para validar el cierre de la vista preliminar, sea éste total o parcial.

En cuanto al hecho de que el Ministerio Público incluyó en las denuncias presentadas en contra del Sr. Eliecer Díaz el nombre y número de placa reales del agente 08NAI29, consideramos que esa acción, aunque denota cierto descuido del Ministerio Público en proteger la identidad del agente en cuestión, no convirtió en inoficioso el pedido del Estado. Es decir, ese hecho, por sí solo, no es el causante de la denegatoria al pedido del Estado. No obstante, recalcamos, al igual que lo hicimos en *Pueblo v. Pepín Cortés*, que las medidas tomadas por el Estado para proteger la identidad de un agente encubierto, o la ausencia de éstas, son un factor a considerar al momento de determinar si procede el cierre de una vista preliminar o juicio.

**IV.**

En el caso de autos, el Tribunal de Primera Instancia concedió una vista de necesidad ante una solicitud de cierre parcial de la vista preliminar. Luego de ponderar los factores esbozados en *Pueblo v. Pepín Cortés*, determinó que no se justificaba el cierre, pues no se demostró la necesidad de proteger un interés apremiante del Estado. El Tribunal de Apelaciones revocó la determinación del foro primario, actuación que hoy avala este Tribunal. Al así resolver, este Foro debilita la norma establecida en *Pueblo*

*v. Pepín Cortés*, *ante*, y autoriza una exclusión automática del público cada vez que un agente encubierto presta testimonio. Esta Opinión, además de socavar un derecho fundamental del imputado, atenta contra nociones básicas de nuestro ordenamiento judicial, pues acoge como ciertas las alegaciones de una de las partes sin respetar el principio de deferencia a las determinaciones de hechos del foro primario.

Disiento del curso de la Mayoría por considerar que en este caso -a la luz de las determinaciones de hecho realizadas por el Tribunal de Primera Instancia- no procedía la solicitud del Ministerio Público de cerrar parcialmente la vista preliminar al público.


                              Anabelle Rodríguez Rodríguez
                              Juez Asociada